# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EUROBOOR B.V.,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **2:17-cv-2157-KOB** |
| **ELENA GRAFOVA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Euroboor's "Motion Regarding the Recoverability of Attorney's Fees" (doc. 251), and Ms. Grafova's "Memorandum of Law Regarding Attorney's Fees and Costs Under Dutch Law" (Doc. 254). The court stands by its prior statement that it will reserve ruling in full on Ms. Grafova's request until after the case's final hearing. (Doc. 267 at 1). But the court issues this order for two purposes: (1) to rule on the threshold issue of whether Grafova may recover any attorney's fees or costs whatsoever; and (2) to clarify the legal standard that it will apply to Grafova's request for attorney's fees and costs under Dutch law.

In October 2015, Ms. Grafova and Euroboor FZC entered into loan agreements that provided, in part: "All costs of this deed, as well as all costs creditor may incur with respect to the preservation and exercise of rights deriving

1

from this agreement, will be borne by the debtor." (Doc. 205-2 at 201, Loan Article 7). The loan also contains a choice of law provision, which states that the loan agreements are "exclusively governed by the law of The Netherlands." (*Id.*, Article 7.3). The court has already ruled that it will apply Dutch law to interpret the loan agreements. (Doc. 231 at 21).

At this stage, the court construes Ms. Grafova's request to entail two issues: (1) whether the parties' loans entitle Grafova to attorney's fees, court costs, and expert costs under Dutch law; and (2) if so, what factors bear on the amount of costs and fees that Euroboor FZC owes Grafova. The court will address each issue in turn.

## I. Whether Dutch Law Entitles Ms. Grafova to Attorney's Fees, Court Costs, and Expert Costs

Euroboor concedes that "attorneys' fees are included within the term 'costs'" in Article 7 of the loan agreement. (Doc. 251 at 1). But Euroboor first argues that Ms. Grafova is not entitled to any attorney's fees or costs because "both parties prevailed on some elements" of Grafova's breach of contract claim. (*Id.* at 2). The court disagrees with this argument—the court can parse out the relevant cost and fees that Grafova deserves.

As an initial matter, Euroboor's authorities for this argument are secondary sources that interpret Dutch Code of Civil Procedure Article 237. But Article 237 does not appear to apply to a case in which the parties previously *agreed* to an

award of costs by contract. *See* (Doc. 254-8 at 19, *Appellant v. Respondent*, No. 200.191.819/01 (Amsterdam Ct. App. May 16, 2017) ("The parties are free to deviate from the regulation in Article 237.")). When, as here, the parties have agreed to allocate costs, the Article 242 of the Dutch Code of Civil Procedure provides that the court may "moderate" the amount of costs that it will award. *See* Dutch Code of Civ. P. Article 242(1). Because the parties' loan agreements explicitly allocate "costs," the court doubts whether Article 242 of the Dutch Code permits it to order Grafova to bear her own costs and attorneys' fees *in full*, rather than simply moderate the amount of fees she may receive as those that can be allocated to enforcing the loan.

At any rate, the court finds that Grafova may recover at least some attorney's fees because she is the significant prevailing party as to her breach of contract claim. The court granted summary judgment in her favor when it ruled that Euroboor FZC breached the loan agreement. (Doc. 231 at 24). To be sure, the court denied Grafova's request for roughly $20 million in penalties. But the court ruled in Grafova's favor on several key issues: that Euroboor FZC owed Grafova $956,901.59 as of March 31, 2021; that the interest owed continues to accrue at a compounded quarterly rate of 6% per annum until Euroboor FZC pays off the loan; and that Euroboor FZC will owe some amount of penalty ranging between $8,015 and $466,000. (Doc. 231 at 24 *et seq.*). Although the parties provide little Dutch

authority defining a "prevailing party,"[1] the summary judgment rulings in Grafova's favor easily establish her as the prevailing party, at least under American law. *See Utility Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002) (defining prevailing party as a "party in whose favor a judgment is rendered, regardless of the amount of damages awarded") (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598, 603 (2001)). Because the court rendered summary judgment in Grafova's favor as to the crux of her breach of contract claim, she may seek attorney's fees and costs.

This conclusion accords with the Dutch law principle that the prevailing party typically receives an award of "costs" including at least some measure of attorney's fees. For example, Grafova points the court to one Dutch breach of contract case in which the Dutch court awarded attorney's fees under loan language almost identical to that here. In the case of *Mother v. Son*, the parties' loan agreement stated, "All costs to which this loan gives rise, or will give rise in the future, including those which the creditor deems necessary for the preservation and exercise of its rights, shall be borne by the debtor." (Doc. 254-7 at 13, citing

---

[1] Euroboor attempted to provide a URL for one Dutch case purportedly defining the term "prevailing party." (Doc. 263 at 4–5). But following that URL led the court only to a Dutch language version of the case. So that case provides little guidance. *See Mut. Serv. Ins. Co. v. Frit Indus.*, 358 F.3d 1312, 1321 (11th Cir. 2004) ("[The] district court is not required to conduct its own research into the content of foreign law if the party urging its application declines to do so.").

4

No. C/15/307728/HA ZA 20-600 (Dist. Ct. N. Holland June 30, 2021)). The Dutch court found that the contract's "cost" provision obliged the losing party to pay at least some of the prevailing party's attorney's fees. Based on this authority, the court finds that Dutch law entitles Grafova to an award of at least some of her attorney's fees.

Euroboor alternatively argues that Grafova may not seek her attorney's fees because she brought her breach of contract claim prematurely. (Doc. 263 at 6). Euroboor provides a Dutch case indicating a party may not recover attorney's fees if it files a breach of contract claim when the opposing party was "not obliged to pay the amount claimed" at the time of the case's filing. (Doc. 263-1 at 14, *Envo BV v. Petrus Johannes Clemens Cornelis Maagdenberg*, No. 12841 LJN AG5521 (High Council Jan. 23, 1987)). For one thing, Euroboor admits that it produced the English version of *Envo BV* from "Google translate," and the court struggles to make heads or tails of its analysis. Even so, the court has already ruled that Grafova's breach of contract claim was ripe for review when she filed it because she had already suffered an alleged harm: "she [was] owed interest which ha[d] not been paid." (Doc. 88 at 25). So the court finds the timing of Grafova's breach of contract claim does not prevent her from seeking attorney's fees.

But Grafova requests more than just attorney's fees; she also seeks "expert costs and court costs." (Doc. 254 at 1). Grafova provides several cases indicating

5

that prevailing parties may seek such costs. In *Mother v. Son*, for instance, the court found that the contractual language entitled the prevailing party to an award of "legal costs," including the cost of attorney's fees, court summons, and court fees. (Doc. 254-7 at 14). In another case, a Dutch court awarded the prevailing party "expert costs" for the costs of its expert to attend a court hearing. (Doc. 254-6 at 11, *NextStage Inv. B.V. v. BMC Software Distrib.*). Based on this authority, the court finds that Grafova may seek at least some of her costs including "expert costs and court costs." But after the final hearing, the court may choose to moderate the amount of costs that Grafova may recover based on the factors described below.

## II. Factors Bearing on What Costs and Fees Ms. Grafova May Recover

To this point, the court has concluded only that Dutch law entitles Grafova to *seek* attorney's fees, expert costs, and court costs. But the court now turns to the legal standard governing whether, and to what degree, it will mitigate any award that Grafova seeks.

As explained above, when the parties to a contract have agreed to an allocation of costs, Dutch Code of Civil Procedure Article 242 provides:

> The court may ex officio *moderate* amounts which may be deemed to have been stipulated in order to compensate litigation costs or extrajudicial costs . . . but not below the amount of the litigation costs to be estimated pursuant to the law or the amount of the extrajudicial costs which, in view of the rates according to which such costs are usually charged to principals, are *reasonable* vis-à-vis the other party.

6

(Doc. 254-2 at 3, Dutch Code of Civ. P. Article 242(1) (emphases added)). In other words, the court may "moderate" the award of costs until that award is "reasonable." *See also* (Doc. 254-6 at 11, *NextStage Inv. B.V. v. BMC Software Distrib.* ("Full reimbursement of all *reasonable* costs should therefore be the starting point.") (emphasis added)).

When, as here, the parties' contractual agreement does *not* specifically include "attorney's fees" as costs, Dutch courts typically presume that the Dutch "liquidation rate" provides a reasonable starting point for fee requests. *See* (Doc. 254-7 at 13, *Mother v. Son* (stating that the liquidation rate provides "the starting point in Dutch procedural law.")). The parties have provided authority exploring the labyrinthine liquidation rate system, but the court need not delve into that material at this time.[2] Most importantly, it does not appear that the liquidation rate compensates attorneys for every hour that they devoted to case-related tasks. Instead, the liquidation rate awards attorney's fees based on tasks completed and the amount in controversy. In other words, the liquidated point system provides "not the full legal costs . . . but part thereof." (*Id.*).

Under the liquidated point system, the court will only award the full, "actual costs" of attorney's fees if it opts to "moderate" the liquidated point award upward.

---

[2] After the May 16, 2022 hearing, Grafova may renew her attorney fee requests by applying the liquidated point system to her attorney's efforts concerning her breach of contract claim, and the court will afford Euroboor an opportunity to respond.

The court in *Mother* stated that courts may award actual attorney's fees only "in the event of abuse of procedural law or unlawful acts." (*Id.*). For example, the prevailing party's offering an "obviously unfounded" claim or defense may constitute abuse of procedural law. (*Id.*). But advancing a "meager" claim that nonetheless has a "chance [to] advance" does not meet this mark. (*Id.*). And although *Mother* did not address allegations of dissipated assets, this court has previously indicated that evidence of fraudulent dissipation of Euroboor FZC's assets may constitute evidence of "unlawful acts" potentially justifying an upward variance of fees from the presumably reasonable starting point under the Dutch liquidation rate.

    This court finds other relevant factors in *NextStage v. BMC Software*, in which the court awarded actual attorney's fees. Importantly, the contract in *NextStage* explicitly provided for the recovery of "attorney fees and costs," unlike the loan language here. (Doc. 254-6 at 9). That court awarded *full* attorney's fees, partly because of the losing party's litigiousness and that party's choice "to appeal with 17 grievances and a large number of new exhibits." (*Id.* at 11). That court also rejected the argument that the prevailing party did not deserve full attorney's fees because it had advanced an unnecessary number of "deeds"—a translated term that appears to signify motions or amended claims. (*Id.* at 11). And the court

8

considered that the contract at issue existed between "professional parties acting with each other on a commercial basis."

Although the above cases primarily address the factors bearing on reasonable attorney's fees, the parties provide little authority indicating what factors bear on the reasonableness of Grafova's request for expert fees and court costs. Unhelpfully, many Dutch courts award costs with no analysis at all. *See* (Doc. 254-8 at 19, *Appellant v. Respondent*; Doc. 254-7 at 13, *Mother v. Son*). But in *NextStage v. BMC Software*, the court subjected the prevailing party's request for expert costs to a "reasonableness" analysis, similar to the attorney's fee request. (Doc. 254-6 at 11). The court found reasonable the request for the expert's costs to attend a hearing, partly because the opposing party also had its own expert witness attend the hearing. (*Id.*). It does not appear that the prevailing party sought costs for the expert's other case-related tasks, such as researching or preparing an opinion. The court also ordered payment of "court fees" without analysis. In the absence of other authority showing distinct factors as to the recoverability of court and expert costs, the court will assess whether Grafova's requested costs are reasonable.

## CONCLUSION

The court first **ORDERS** that Ms. Grafova may seek attorney's fees, court costs, and expert costs. Neither her failure to prevail on her claim for $20 million

in penalties nor her allegedly premature filing of the breach of contract claim precludes her from *seeking* such costs.

And based on the Dutch authority discussed above, the court finds that the key inquiry as to Grafova's request for attorney's fees and costs is the "reasonableness" of that request. (Doc. 254-2 at 3, Dutch Code of Civ. P. 242). The court will start with the presumption that the Dutch liquidated point system provides a reasonable means of calculating Grafova's attorney's fees, rather than full payment of her attorney's fees. The court will depart from the liquidated point award if the parties show that award to be unreasonable, based on the following factors:

- Abuse of procedural law by either party, including the unnecessary filing of "obviously unfounded" motions or claims, *see Mother*;

- Unlawful acts by either party, including fraudulent dissipation of assets and intentional failure to repay the loans, *see Mother* and *NextStage*;

- And the professional or commercial nature of the parties' agreement, *see NextStage*.

The court will also rely on these factors as it assesses Grafova's request for court costs and expert costs.

Again, Ms. Grafova will have an opportunity to renew her motion for costs after the May 16, 2022 hearing, including the dollar amount sought. And Euroboor

will have an opportunity to argue the "reasonableness" of such costs in briefs submitted after the hearing.

**DONE** and **ORDERED** this 5th day of April, 2022.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE